ORIGINAL

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

FILED
NOV - 1 2007
U.S. COURT OF FEDERAL CLAIMS

**BID PROTEST**

| | |
|---|---|
| **GREAT LAKES DREDGE & DOCK COMPANY LLC,**<br>**2122 York Road**<br>**Oak Brook, Illinois 60523**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | 07-765 C<br>**Civil Action No.** ________ |

**COMPLAINT FOR PRELIMINARY AND**
**PERMANENT INJUNCTIVE RELIEF**

For its Complaint in the above-captioned matter, plaintiff Great Lakes Dredge & Dock Company LLC ("GLDD") states as follows:

## NATURE OF ACTION

1. This is a pre-award bid protest challenging the actions of the United States Army Corps of Engineers, Baltimore District ("Corps") under Invitation for Bids No. W912DR-07-B-0017 ("IFB" or "Solicitation"). The IFB solicited bids for maintenance dredging in the entrance channels to Baltimore Harbor, Maryland.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(b).

## PARTIES

3. Plaintiff GLDD is a Delaware limited liability company with its principal place of business in Oak Brook, Illinois. GLDD is one of the largest dredging contractors in the United States and has successfully performed maintenance dredging in the Baltimore Harbor entrance channels many times.

4. Defendant, the United States, through its agency the Corps, conducted this procurement.

## FACTUAL ALLEGATIONS

5. The Corps issued the IFB on September 5, 2007. The IFB calls for maintenance dredging of various sections of the entrance channel to Baltimore Harbor in Maryland. Maintenance dredging consists of removing material that has shoaled into a channel since the last time it was dredged in order to restore the depth of the channel. Maintenance dredging of the entrance channel to Baltimore Harbor has been performed pursuant to annual contracts for many years. Under these contracts for the past four years (2003 to 2006), for example, the average quantity removed and paid for by the Corps has been 2,275,657 cubic yards ('cy"), with a range from 1,806,667 cy to 3,279,346 cy.

6. The IFB included a base bid that consisted of Contract Line Items ("CLINs") 0001, Mobilization and Demobilization, and 0002, which called for maintenance dredging of one section, Craighill Angle Acceptance Section ("AS") 1, of the entrance channel. The IFB also included seven optional items (CLINS 0003 to 0009) for dredging other sections of the entrance channel. The base bid dredging (CLIN 0002) was for an estimated quantity of 301,000 cubic yards ("cy"). The optional dredging CLINS called for an estimated 2,294,700 cy

of dredging. The base bid dredging was less than 12% of the total project quantity of 2,595,700 cy.

7. The IFB's Bid Schedule (at page 3 of 52) provided as follows:

**UNIT PRICE SCHEDULE**

| Item No. | Description | Estimated Quantity | Unit | Price | Amount |
|---|---|---|---|---|---|
| 0001 | Mobilization and Demobilization | | JOB | L.S. | $________ |
| 0002 | Dredging -- Craighill Angle - Acceptance Section 1 | 301,000 | C.Y. | $________ | $________ |

TOTAL ESTIMATED BID AMOUNT $____________

**OPTIONAL ITEMS**

| Item No. | Description | Estimated Quantity | Unit | Price | Amount |
|---|---|---|---|---|---|
| 0003 | Dredging - Craighill Angle - Acceptance Section 2 | 302,000 | C.Y. | $________ | $________ |
| 0004 | Dredging - Craighill Upper Range | 103,000 | C.Y. | $________ | $________ |
| 0005 | Dredging - Cutoff Angle | 134,700 | C.Y. | $________ | $________ |
| 0006 | Dredging - Ft. McHenry Channel | 481,000 | C.Y. | $________ | $________ |
| 0007 | Dredging - Brewerton Extension | 629,000 | C.Y. | $________ | $________ |
| 0008 | Dredging - Brewerton Channel | 395,000 | C.Y. | $________ | $________ |
| 0009 | Dredging Brewerton Angle | 250,000 | C.Y. | $________ | $________ |

8. The Notes to Bidders on the very next page of the IFB (page 4 of 52) contained the following paragraph, which is found in the Federal Acquisition Regulations ("FAR") at FAR 52.217-5:

> EVALUATION OF OPTIONS: Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interest, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s).

Pursuant to FAR 17.202(a) and 17.208(c), this clause may be used only when the contracting officer has determined that there is a reasonable likelihood that the options will be exercised.

9. The Notes to Bidders also included the following:

> The low bidder for purposes of award shall be the conforming responsible bidder offering the low aggregate amount for the "Total Estimated Bid Amount".

10. Bids were opened pursuant to the IFB on October 11, 2007. Two bids were received, one from GLDD and one from Weeks Marine, Inc. ("Weeks"). The bids submitted contained the following information:

| CLIN | Description | Estimated Quantity | Unit | Great Lakes | Weeks |
|---|---|---|---|---|---|
| 0001 | Mobilization and Demobilization | 1.00 | LS | $4,449,000.00 | $2,495,000.00 |
| 0002 | Dredging -- Craighill Angle - Acceptance Section 1 | 301,000 | CY | 2,483,250.00<br>(8.25) | 3,897,950.00<br>(12.95) |
| | | TOTAL ESTIMATED BID AMOUNT | | 6,932,250.00 | 6,392,950.00 |
| 0003 | Craighill Angle AS2 | 302,000 | CY | 2,340,500.00<br>(7.75) | 3,608,900.00<br>(11.95) |
| 0004 | Craighill Upper Range | 103,000 | CY | 777,650.00<br>(7.55) | 1,251,450.00<br>(12.15) |
| 0005 | Cutoff Angle | 134,700 | CY | 1,178,625.00<br>(8.75) | 1,906,005.00<br>(14.15) |
| 0006 | Ft. McHenry Channel | 481,000 | CY | 3,992,300.00<br>(8.30) | 5,459,350.00<br>(11.35) |
| 0007 | Brewerton Extension | 629,000 | CY | 4,811,850.00<br>(7.65) | 5,881,150.00<br>(9.35) |
| 0008 | Brewerton Channel | 395,000 | CY | 2,765,000.00<br>(7.00) | 3,772,250.00<br>(9.55) |
| 0009 | Brewerton Angle | 250,000 | CY | 1,862,500.00<br>(7.45) | 2,787,500.00<br>(11.15) |

Weeks also included on the bid price schedule that it submitted its total price for the base bid and optional items, which was $31,059,555. This price was almost $6.4 million (26%) higher than GLDD's price of $24,660,675.

11. On October 22, 2007, the Corps issued Amendment 0003 to the IFB, which stated that "[t]he purpose of this modification is to cancel the solicitation in it's entirety. The subject project will be re-issued under a new solicitation number in the future." This Amendment did not provide any reason to support cancellation of the IFB.

12. In an October 23, 2007 telephone call between GLDD and representatives of the Corps, which the Corps referred to as "a debriefing," the Corps stated that it cancelled the IFB because conflicting statements in the Notes to Bidders left the Corps unable to determine the low bidder.

13. GLDD then requested that the Corps provide a written explanation of the reason for cancellation. In an October 29, 2007 email, the Contracting Officer responded and provided a single reason for the cancellation. The Contracting Officer stated that the Corps cancelled the IFB based on FAR 14.404-1(c)(1) because inadequate or ambiguous specifications were cited in the invitation, asserting that "there were conflicting statements in the notes to bidders" and the Corps "could not determine the low bidder."

14. On October 30, 2007, the Corps issued a pre-solicitation notice for solicitation number W912DR-08-B-0001. This notice relates to maintenance dredging of approximately 2,500,000 cy from the same entrance channel sections contained in the IFB. This pre-solicitation notice contains an original response date (bid submission date) of December 13, 2007.

15. The Corps apparently is taking the position that although the terms of FAR 52.217-5 plainly provide that contract award would be based on the low total price for the base bid and all options, the Note to Bidders quoted in ¶ 9 above, which appears two sentences after FAR 52.217-5, provided that award would be made to the bidder with the lowest base bid.

**FIRST CLAIM FOR RELIEF:**

**THE CORPS' ATTEMPT TO CANCEL THE IFB IS ARBITRARY AND CAPRICIOUS, AN ABUSE OF DISCRETION, AND A CLEAR AND PREJUDICIAL VIOLATION OF FAR 14.404-1**

16. GLDD repeats and realleges paragraphs 1-15 in its Complaint as though fully set forth herein.

17. FAR 14.404-1(a)(1) provides that "[p]reservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation." FAR 14.404-1(c)(1) provides that an IFB may be cancelled and all bids rejected when, consistent with FAR 14.404-1(a)(1), the agency head determines in writing that "[i]nadequate or ambiguous specifications were cited in the invitation."

18. The IFB did not contain conflicting statements in the Notes to Bidders and was not ambiguous as asserted by the Corps. The IFB included FAR 52.217-5, which plainly and specifically provided that the Corps would evaluate offers for award purposes by adding the total price for the base bid and the total price of all optional items. The language contained two sentences later in the Notes to Bidders, stating that the low bidder would be the bidder offering the low ***aggregate*** Total Estimated Bid Amount, also referred to the bidders' total prices for the base bid and all optional items. GLDD was the low bidder by almost $6.4 million.

19. The Corps' conclusion that the Notes to Bidders contain conflicting statements regarding whether bids were to be evaluated for award only on the base bid or the

base bid plus all options violates well-established canons of contract construction and is not reasonable.

20. The Corps' conclusion that the IFB was inadequate or ambiguous lacks a rational basis, was arbitrary and capricious and an abuse of discretion, and is otherwise not in accordance with law, including the Administrative Procedure Act, 5 U.S.C. § 706, and FAR 14.404-1. The Corps did not have a compelling reason to cancel the IFB as required by FAR 14.404-1 and is improperly attempting to "shop" GLDD's low bid price and hold an impermissible auction in violation of Federal procurement law.

21. The Corps' cancellation of the IFB is a clearly prejudicial violation of applicable procurement laws and regulations, including the requirements of FAR 14.404-1. GLDD has been prejudiced by the Corps' cancellation because GLDD was the low bidder and had a substantial chance of receiving award of a contract under the IFB and because the Corps intends to resolicit the IFB work after GLDD's bid prices have been exposed.

22. GLDD is likely to prevail on the merits of this case, will suffer irreparable harm if an injunction is not issued and has no adequate remedy at law. The issuance of the injunctive relief sought by GLDD will not substantially harm the government or third parties and will serve the public interest.

**REQUEST FOR RELIEF**

WHEREFORE, GLDD respectfully requests that the Court grant judgment in its favor and order the following relief:

1. A preliminary injunction that prevents the Defendant from resoliciting any of the work solicited under IFB No. W912DR-07-B-0017 until the Court issues a final decision on the merits of this case;

2. A permanent injunction prohibiting the Defendant from awarding a contract for any of the work solicited under IFB No. W912DR-07-B-0017 to anyone other than GLDD;

3. An award to GLDD of its bid preparation costs, and fees and expenses incurred in pursuing this protest; and

4. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902

Attorney of Record for Plaintiff
Great Lakes Dredge & Dock Company LLC

Dated: November 1, 2007