ORIGINAL

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

FILED
NOV 1 2007
U.S. COURT OF FEDERAL CLAIMS

**GREAT LAKES DREDGE & DOCK COMPANY LLC,**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

**07-765 C**

**Civil Action No.** _________

## MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65(a) of the Rules of the Court of Federal Claims, Plaintiff Great Lakes Dredge & Dock Company LLC moves the Court for entry of a preliminary injunction enjoining the Defendant, the U.S. Army Corps of Engineers, and their agents, employees, officers and representatives, and those acting in concert with or participating with any of the foregoing, from resoliciting or attempting to resolicit any of the work called for under Invitation for Bids No. W912DR-07-B-0017, pending a final determination of the merits of this action by this Court. A Memorandum in Support of Plaintiff's Motion for Preliminary Injunction is filed herewith, and a proposed order is attached.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902
dsauls@steptoe.com

**Attorney of Record for Great Lakes Dredge & Dock Company LLC**

Dated: November 1, 2007

**IN THE UNITED STATES
COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| **GREAT LAKES DREDGE & DOCK COMPANY LLC,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **UNITED STATES,** <br><br> **Defendant.** | **Civil Action No. __________** |

**ORDER**

Upon consideration of Plaintiff's Motion For Preliminary Injunction, and Defendant's opposition thereto, it is this ______ day of ______________, 2007, hereby ORDERED that the Defendant, the U.S. Army Corps of Engineers, and their officers, agents, and employees, and all other persons in active concert or participation with them, are enjoined from resoliciting or attempting to resolicit any of the work called for under IFB No. W912DR-07-B-0017 until a final hearing and a determination on the merits of this action are issued by this Court.

________________________________
J.

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **GREAT LAKES DREDGE & DOCK COMPANY LLC,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. ________** |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF GREAT LAKES DREDGE & DOCK COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902

Attorney of Record for Plaintiff
Great Lakes Dredge & Dock Company LLC

Dated: November 1, 2007

# TABLE OF CONTENTS

Page


I. STATEMENT OF ISSUES ..... 1

II. STATEMENT OF FACTS/STATEMENT OF THE CASE ..... 1

III. ARGUMENT ..... 5

- A. Jurisdiction And Standard Of Review In Bid Protest Cases ..... 5
- B. Standard Of Review For Cancellation Of An IFB After Bid Opening ..... 6
- C. The IFB Was Not Inadequate Or Ambiguous, And The Corps Did Not Have A Compelling Reason To Cancel As Required By The FAR ..... 8
  - 1. Legal Standards Governing Contract/Solicitation Interpretation ..... 9
  - 2. The Corps' Interpretation of Bidder Note 2 Is Inconsistent With The Structure and Language of the IFB Taken As A Whole ..... 10
  - 3. The Corps' Interpretation Is Not Reasonable Because It Renders A Critical Part Of Bidder Note 2 Meaningless ..... 11
  - 4. The Corps' Interpretation Of Bidder Note 2 Needlessly Creates Conflict Rather Than Reading Bidder Note 2 Consistently With The Remainder Of The IFB ..... 13
- D. GLDD Is Entitled To The Preliminary Injunctive Relief It Seeks ..... 14

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Page(s)

FEDERAL COURT CASES

Antarctic Support Assocs. v. United States,
46 Fed. Cl. 145 (2000) ....................5

Avedon Corp. v. United States,
15 Cl. Ct. 771 (1988) ....................6

B.D. Click Co. v. United States,
614 F.2d 748 (Ct. Cl. 1980) ....................9

Bean Dredging Corp. v. United States,
22 Cl. Ct. 519 (1991) ....................14

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) ....................14

California Marine Cleaning, Inc. v. United States,
42 Fed. Cl. 281 (1998) ....................6, 7, 8

Citizens to Preserve Overton Park v. Volpe,
401 U.S. 402 (1971) ....................5

Ellsworth Assocs., Inc. v. United States,
45 Fed. Cl. 388 (1999) ....................14

Granite Constr. Co. v. United States,
962 F.2d 998 (Fed. Cir. 1992) ....................9

Great Lakes Dredge & Dock Co. v. United States,
60 Fed. Cl. 350 (2004) ....................5, 6, 7, 8, 14, 15

Hol-Gar Mfg. Corp. v. United States,
351 F.2d 972 (Ct. Cl. 1965) ....................9, 10, 12

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) ....................5

Massman Constr. Co. v. United States,
63 F.Supp. 635 (1945) ....................7

Overstreet Elec. Co. v. United States,
47 Fed. Cl. 728 (2000) ....................7, 14

P. Francini & Co., Inc. v. United States,
2 Cl. Ct. 7 (1983) .......... 7

Raytheon Co. v. United States,
2 Cl. Ct. 763 (1983), aff'd, 730 F.2d1470 (Fed. Cir. 1984) .......... 9, 12

Stratos Mobile Networks USA, LLC v. United States,
213 F.3d 1375 (Fed. Cir. 2000) .......... 6, 10

United Int'l Investigative Servs., Inc. v United States,
41 Fed. Cl. 312 (1998) .......... 15

United Int'l Investigative Servs. v. United States,
109 F.3d 734 (Fed. Cir. 1997) .......... 9, 10, 13

Vanguard Sec., Inc. v. United States,
20 Cl. Ct. 90 (1990) .......... 6, 7, 8, 10

**COMPTROLLER GENERAL CASES**

Canadian Commercial Corp., B-255642, 94-1 C.P.D. ¶ 202 (March 18, 1994) .......... 7

Massaro Co.; Poerio, Inc.; B-280772.2, et. al, 98-2 C.P.D. ¶ 123 (Dec. 4, 1998) .......... 7

**STATUTES**

5 U.S.C. § 706(2)(A) .......... 5

28 U.S.C. § 1491(b) .......... 5

**FEDERAL ACQUISITION REGULATIONS**

FAR 14.404-1 .......... 6, 8, 13, 15

FAR 14.404-1(a) .......... 6

FAR 14.404-1(c)(1) .......... 4, 7

FAR 17.202 .......... 10

FAR 17.208 .......... 10

FAR 52.217-3 .......... 11

FAR 52.217-5 .......... 2, 8, 10, 11, 13

**BOOKS AND ARTICLES**

Merriam-Webster Collegiate Dictionary (11th ed. 2004) .............................................................12

## I. STATEMENT OF ISSUES

1. Whether The U.S. Army Corps of Engineers' ("Corps") Cancellation of IFB No. W912DR-07-B-0017 Violated Federal Acquisition Regulation 14.404-1.

## II. STATEMENT OF FACTS/STATEMENT OF THE CASE

The Corps issued Invitation for Bids W912DR-07-B-0017 ("IFB" or "Solicitation") on September 5, 2007. The IFB calls for maintenance dredging of various sections of the entrance channel to Baltimore Harbor in Maryland. Maintenance dredging consists of removing material that has shoaled into a channel since the last time it was dredged in order to restore the depth of the channel. Maintenance dredging of the entrance channels to Baltimore Harbor has been performed under annual contracts for many years. Under these contracts for the past four years (2003 to 2006), for example, the average quantity removed and paid for by the Corps has been 2,275,657 cy, with a range from 1,806,667 cy to 3,279,346 cy.[1]

The IFB included a base bid that consisted of Contract Line Items ("CLIN") 0001, Mobilization and Demobilization, and 0002, maintenance dredging of one section, Craighill Angle Acceptance Section ("AS") 1, of the entrance channel. The IFB also included seven optional items (CLINS 0003 to 0009) for dredging other sections of the entrance channel. The base bid dredging (CLIN 0002) was for an estimated quantity of 301,000 cubic yards ("cy"). The optional dredging CLINS called for an estimated 2,294,700 cy of dredging. The base bid dredging was less than 12% of the total project quantity of 2,595,700 cy.

The IFB's Bid Schedule (at page 3 of 52) provided as follows:

[1] These figures come from final payment estimates obtained from GLDD's files for contracts that GLDD performed and from Freedom of Information Act requests on contracts performed by others.

**UNIT PRICE SCHEDULE**

| Item No. | Description | Estimated Quantity | Unit | Price | Amount |
|---|---|---|---|---|---|
| 0001 | Mobilization and Demobilization | | JOB | L.S. | $________ |
| 0002 | Dredging -- Craighill Angle - Acceptance Section 1 | 301,000 | C.Y. | $________ | $________ |

TOTAL ESTIMATED BID AMOUNT $________________

**OPTIONAL ITEMS**

| Item No. | Description | Estimated Quantity | Unit | Price | Amount |
|---|---|---|---|---|---|
| 0003 | Dredging - Craighill Angle - Acceptance Section 2 | 302,000 | C.Y. | $________ | $________ |
| 0004 | Dredging - Craighill Upper Range | 103,000 | C.Y. | $________ | $________ |
| 0005 | Dredging - Cutoff Angle | 134,700 | C.Y. | $________ | $________ |
| 0006 | Dredging - Ft. McHenry Channel | 481,000 | C.Y. | $________ | $________ |
| 0007 | Dredging - Brewerton Extension | 629,000 | C.Y. | $________ | $________ |
| 0008 | Dredging - Brewerton Channel | 395,000 | C.Y. | $________ | $________ |
| 0009 | Dredging Brewerton Angle | 250,000 | C.Y. | $________ | $________ |

The Notes to Bidders on the very next page of the IFB (page 4 of 52) contained the following paragraph, which is found in the Federal Acquisition Regulations ("FAR") at FAR 52.217-5:

> EVALUATION OF OPTIONS: Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interest, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s). (FAR 52.217-5 JUL 1990)

This standard FAR provision also was incorporated by reference into Section 00100 of the IFB, the Instructions to Bidders. Pursuant to FAR 17.202(a) and 17.208(c), this clause may only be used in sealed bid procurements when the Contracting Officer has determined that there is a reasonable likelihood that the options will be exercised.

The Notes to Bidders also included (two sentences later) a second statement regarding the identification of the low bidder (which will be referred to hereafter as Bidder Note 2):

> The low bidder for purposes of award shall be the conforming responsible bidder offering the low aggregate amount for the "Total Estimated Bid Amount".

Bids were opened pursuant to the IFB on October 11, 2007. Two bids were received, one from plaintiff Great Lakes Dredge & Dock Company LLC ("GLDD"), and one from Weeks Marine, Inc. ("Weeks"). The bids submitted contained the following price information:

| **CLIN** | **Description** | **Estimated Quantity** | **Unit** | **Great Lakes** | **Weeks** |
| --- | --- | --- | --- | --- | --- |
| 0001 | Mobilization and Demobilization | 1.00 | LS | $4,449,000.00 | $2,495,000.00 |
| 0002 | Dredging -- Craighill Angle - Acceptance Section 1 | 301,000 | CY | $2,483,250.00 ($8.25/cy) | $3,897,950.00 ($12.95/cy) |
| | | TOTAL ESTIMATED BID AMOUNT | | $6,932,250.00 | $6,392,950.00 |
| 0003 | Craighill Angle AS2 | 302,000 | CY | $2,340,500.00 ($7.75/cy) | $3,608,900.00 ($11.95/cy) |
| 0004 | Craighill Upper Range | 103,000 | CY | $777,650.00 ($7.55/cy) | $1,251,450.00 ($12.15/cy) |
| 0005 | Cutoff Angle | 134,700 | CY | $1,178,625.00 ($8.75/cy) | $1,906,005.00 ($14.15/cy) |
| 0006 | Ft. McHenry Channel | 481,000 | CY | $3,992,300.00 ($8.30/cy) | $5,459,350.00 ($11.35/cy) |
| 0007 | Brewerton Extension | 629,000 | CY | $4,811,850.00 ($7.65/cy) | $5,881,150.00 ($9.35/cy) |
| 0008 | Brewerton Channel | 395,000 | CY | $2,765,000.00 ($7.00/cy) | $3,772,250.00 ($9.55/cy) |
| 0009 | Brewerton Angle | 250,000 | CY | $1,862,500.00 ($7.45/cy) | $2,787,500.00 ($11.15/cy) |

Weeks also included on the bid price schedule that it submitted its total price for the base bid and optional items, which was $31,059,555. Although Weeks' price for the base bid items was

lower, Weeks' price for the base bid and optional items was almost $6.4 million (26%) higher than GLDD's price of $24,660,675.

On October 22, 2007, the Corps issued Amendment 0003 to the IFB, which stated that "[t]he purpose of this modification is to cancel the solicitation in it's entirety. The subject project will be re-issued under a new solicitation number in the future." This Amendment did not provide any reason to support cancellation of the IFB. In an October 23, 2007 telephone call between GLDD and representatives of the Corps, which the Corps referred to as "a debriefing," the Corps stated that it cancelled the IFB because conflicting statements in the Notes to Bidders left the Corps unable to determine the low bidder.

GLDD then requested that the Corps provide a written explanation of the reason for cancellation of the IFB. In an October 29, 2007 email, the Contracting Officer responded and provided a single reason for the cancellation. The Contracting Officer stated that the Corps cancelled the IFB pursuant to FAR 14.404-1(c)(1) because inadequate or ambiguous specifications were included in the invitation, asserting that "there were conflicting statements in the notes to bidders" and that the Corps "could not determine the low bidder."

On October 30, 2007, the Corps issued a pre-solicitation notice for solicitation number W912DR-08-B-0001 for maintenance dredging of approximately 2,500,000 cy of material from the same sections of the entrance channel to Baltimore Harbor that were contained in the IFB. The pre-solicitation notice includes an original response date (current bid submission date) of December 13, 2007.

## III. ARGUMENT

### A. Jurisdiction and Standard of Review In Bid Protest Cases

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1491(b), which gives the Court jurisdiction over both pre-award and post-award bid protests. See Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 358 (2004) (hereafter "Great Lakes") (finding jurisdiction over protest challenging cancellation of an IFB by the Corps).

Section 1491(b)(4) provides that the Court must review agency action in a bid protest case using the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), under which agency action should be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. The Federal Circuit has held that a protest should be granted if either: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).

In reviewing agency action, the Court must consider whether the agency's decision was based on consideration of all relevant factors and whether there has been a clear error of judgment. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971); Great Lakes, 60 Fed. Cl. at 358. If the agency has not considered all relevant factors and articulated a rational connection between the facts found and the choice made, its decision will be set aside as arbitrary and capricious. Id.; Antarctic Support Assocs. v. United States, 46 Fed. Cl. 145, 154 (2000).

Although the arbitrary and capricious standard is deferential, it does not shield agency decisions from a "thorough, probing, in-depth review." Overton Park, 401 U.S. at 415. Moreover, as discussed below, this Court and its predecessors have recognized that an agency's

generally broad discretion in procurement matters is "substantially narrowed" when the agency attempts to cancel a solicitation after bids are opened in order to preserve the integrity of the competitive bidding system. Great Lakes, 60 Fed. Cl. at 360 (citing California Marine Cleaning, Inc. v. United States, 42 Fed. Cl. 281, 292 (1998)). Indeed, where, as here, the critical issue involves interpretation of solicitation language, no deference to the agency's interpretation is appropriate because such interpretation is a matter of law to be determined by the Court. See Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1380 (Fed. Cir. 2000); Avedon Corp. v. United States, 15 Cl. Ct. 771, 775 (1988).

## B. Standard of Review For Cancellation Of An IFB After Bid Opening

The Corps' decision to cancel the IFB here is governed by FAR 14.404-1(a), which provides that:

> ***Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made*** to that responsible bidder who submitted the lowest responsive bid, ***unless there is a compelling reason to reject all bids and cancel the invitation.***

(emphasis added).

This Court and the Claims Court have explained why FAR 14.404-1 restricts agency authority to cancel an IFB after bid opening:

> The rejection of all bids after they have been opened tends to discourage competition because it results in making all bids public without award, which is contrary to the interest of the low bidder, and because rejection of all bids means that the bidders have expended manpower and money in the preparation of their bids without the possibility of acceptance.

Great Lakes, 60 Fed. Cl. at 360 (quoting Vanguard Sec., Inc. v. United States, 20 Cl. Ct. 90, 102 (1990)). Indeed, the Court has recognized that after bid opening, bids

> have been exposed to their competitors and will constitute 'sitting ducks' to serve as targets for competitors in the next round of bidding. Certainly, such a situation tends to undermine the integrity of the bidding process [that FAR § 14.404-1] is designed to foster and protect.

California Marine, 42 Fed. Cl. at 292 (quoting P. Francini & Co., Inc. v. United States, 2 Cl. Ct. 7, 10 (1983)).[2]

FAR 14.404-1(c)(1) recognizes that an agency may cancel an IFB after bids are opened if it determines in writing that "[i]nadequate or ambiguous specifications were cited in the invitation." Yet this Court recognized in Great Lakes that the government's mere assertion that specifications are ambiguous or inadequate is insufficient and that, where the government's "reasons for cancellation are not supported by the record, no compelling reason exists." 60 Fed. Cl. at 360. See Vanguard Sec., 20 Cl. Ct. at 105-107 (decision to cancel based on alleged confusion to bidders rejected where the decision lacked any factual predicate in the record); Canadian Commercial Corp., B-255642, 94-1 C.P.D. ¶ 202 (March 18, 1994) (rejecting agency cancellation where solicitation was not ambiguous); Massaro Co.; Poerio, Inc.; B-280772.2, et. al, 98-2 C.P.D. ¶ 123 (Dec. 4, 1998) (same).

Indeed, this Court has not hesitated to uphold challenges to agency decisions to cancel an IFB where the agency has failed to establish a compelling reason to cancel. See, e.g., Great Lakes, 60 Fed. Cl. at 360; Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728 (2000); California Marine, 42 Fed. Cl. at 294. In addition, this Court and its predecessor have stated many times that "cancellation after bids are opened is inappropriate when an otherwise proper award under a solicitation would serve the actual needs of the Government." Great Lakes, 60

[2] Thus, the Claims Court recognized more than sixty years ago that "[t]o have a set of bids discarded after they are opened and each bidder has learned his competitor's price is a serious matter, and it should not be permitted except for cogent reasons." Massman Constr. Co. v. United States, 63 F. Supp. 635, 643 (1945).

Fed. Cl. at 360 (quoting California Marine, 42 Fed. Cl. at 292). See Vanguard Sec., 20 Cl. Ct. at 102.

As demonstrated below, the Corps' post-bid opening discovery of an alleged "conflict" in the Notes to Bidders is not supported by the terms of the solicitation and violates established rules of contract construction. Therefore, the Corps had no compelling reason to cancel the IFB. The cancellation cannot stand because it constitutes a clear and prejudicial violation of FAR 14.404-1 that makes GLDD a "sitting duck" if another round of bidding is permitted. Moreover, award of a contract to GLDD under the IFB will serve the Corps' interests by having an experienced, well-equipped contractor perform the desired work at a price that is almost $6.4 million dollars lower than the other bid price received.

### C. The IFB Was Not Inadequate Or Ambiguous, And The Corps Did Not Have A Compelling Reason To Cancel As Required By The FAR

Based on the information provided by the Corps to GLDD during the October 23 telephone "debriefing" and in the Corps' October 29 email, the Corps appears to have cancelled the IFB solely because:

1. The Notes to Bidders (and Instructions to Bidders) contained standard FAR clause 52.217-5, which provided that award would be based on the evaluation of the total price of the base bid and optional items;

2. The Corps determined after bid opening that Bidder Note 2, which stated that the low bidder for purposes of award would be the bidder "offering the low aggregate amount for the 'Total Estimated Bid Amount'" provided for award to the low bidder on the base bid;

3. This "conflict" prevented the Corps from determining who was the low bidder because Weeks was the low bidder on the base bid while GLDD was the low bidder (by almost $6.4 million) on the base bid plus optional items; and that

4. This "conflict" justified cancellation of the IFB.

Thus, the cancellation rests entirely on the Corps' conclusion that Bidder Note 2 called for award based on the base bid prices only.

As shown below, this interpretation violated multiple canons of contract construction and is unreasonable because, inter alia, it ignores the basic structure of the IFB, fails to read the IFB as a whole, fails to give meaning to each term of Bidder Note 2, and reflects a strained attempt by the Corps to create conflict where none exists rather than reading the solicitation terms to avoid conflict as required by controlling precedent.

1. **Legal Standards Governing Contract/Solicitation Interpretation**

Courts long have emphasized that in interpreting contract or solicitation language, a court must review the language in the context of the solicitation as a whole and not in isolation. See, e.g., United Int'l Investigative Servs. v. United States, 109 F.3d 734, 737 (Fed. Cir. 1997); B.D. Click Co. v. United States, 614 F.2d 748, 753 (Ct. Cl. 1980). Moreover, contracts or solicitations must be read to give meaning to each of their terms, rather than rendering a portion of the contract superfluous or a nullity. United Int'l, 109 F.3d at 737 ("We must interpret [a contract] as a whole and 'in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.'") (quoting Granite Constr. Co. v. United States, 962 F.2d 998, 1003 (Fed. Cir. 1992)). See Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 979 (Ct. Cl. 1965) ("an interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative void, insignificant, meaningless, or superfluous"); Raytheon Co. v. United States, 2 Cl. Ct. 763, 770 (1983), aff'd, 730 F.2d 1470 (Fed. Cir. 1984) (noting that contract interpretations that require elimination of one word from a contract have consistently been found to be unreasonable).

In addition, solicitations must be read in a manner that reconciles all of their terms and in a manner that avoids conflict and ambiguity unless no other reasonable interpretation is possible. United Int'l, 109 F.3d at 737; Hol-Gar Mfg., 351 F.2d at 979 ("nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible"); Vanguard Security, 20 Cl. Ct. at 103.[3] Applying these precepts to the present case allows only one conclusion -- that the Corps' interpretation of Bidder Note 2 was unreasonable and that there was no compelling reason to cancel the IFB.

### 2. The Corps' Interpretation of Bidder Note 2 Is Inconsistent With The Structure and Language of the IFB Taken As A Whole

The Corps included FAR 52.217-5 in the IFB (twice). Pursuant to FAR 17.202(a) and 17.208(c)(4), this clause is to be used only when the Contracting Officer has determined that there is a reasonable likelihood that the options will be exercised. Thus, the use of this standard FAR clause in the IFB told bidders that the Corps intended to exercise the optional items contained in the IFB and that the award therefore would be based on the total price for the base bid and optional items. This intent to evaluate the optional items, not just the 301,000 cy of base bid dredging, was consistent with both the Corps' past practice (2,275,000 cy of maintenance dredging on average during the last four contracts) and its present needs. In fact, given the way the Corps structured the IFB, it would have been extraordinarily expensive and perhaps even irrational for the Corps to evaluate and award only the base bid.[4]

---

[3] These canons of contract interpretation apply equally to the terms of a solicitation. Stratos Mobile, 213 F.3d at 1380; Vanguard Sec., 20 Cl. Ct. at 103.

[4] This is because the IFB provided for only one mobilization/demobilization item, which was contained in the base bid and paid in full even if the option work was not performed, and included only 12% of the intended work in the base bid. Thus, if the Corps awarded only the base bid, it would be paying ***more than $21 per cy*** for the base bid dredging (Weeks' base bid price of $6,392,950 ÷ 301,000 estimated cy). If, however, all the options were exercised, the

Although the IFB as a whole plainly demonstrates that the Corps intended to evaluate the options for award and to exercise the options, the Corps now asserts that Bidder Note 2, found just two sentences after the text of FAR 52.217-5 in the Notes to Bidders, provides for award based solely on the base bid prices. This interpretation is unreasonable because it completely contradicts the just-quoted FAR 52.217-5. It also is irrational because it would base contract award on the price for the 301,000 cy of dredging contained in the base bid when the Corps plans to perform more than 2.5 million cy of dredging under the base ***and*** optional items. Indeed, this very point is illustrated by the prices received by the Corps here. Although Weeks had a slight price advantage under the base bid, GLDD's price for the base bid plus options -- the work the Corps informed bidders it intended them to do -- was almost $6.4 million less than Weeks' 26% higher price for the same work.

Moreover, the IFB demonstrates that the Corps was familiar with the FAR clauses relating to the evaluation of options, and the FAR contains a specific clause to be used when an agency wants to evaluate for award using only the base bid (FAR 52.217-3). The fact that this clause was ***not*** included in the IFB is yet a further indication that award would be based on the base bid ***and*** option prices. Thus, the Corps' interpretation of Bidder Note 2 is nonsensical when the IFB is considered as a whole.

### 3. **The Corps' Interpretation Is Not Reasonable Because It Renders A Critical Part Of Bidder Note 2 Meaningless**

The IFB's bid schedule (p. 3 of 52 of the IFB) included a line entitled Total Estimated Bid Amount after the base bid and before the optional items on the bid schedule. Due

---

price per cy of dredging under GLDD's bid was only ***$9.50 per cy*** ($24,660,675 bid price ÷ 2,595,700 total cy).

to this placement, both Weeks and GLDD entered their total base bid amounts at this spot on the bid schedule.

The Corps' interpretation of Bidder Note 2 apparently assumes that the words "Total Estimated Bid Amount" in that note refer to the total base bid amount entered on the Total Estimated Bid Amount line of the bid schedule. ***Bidder Note 2, however, does not state that the low bidder for purposes of award will be the bidder offering the low Total Estimated Bid Amount on the bid schedule.*** Instead, Bidder Note 2 refers to the bidder "offering the low ***aggregate*** amount for the 'Total Estimated Bid Amount.'" (emphasis added).

The 2004 Merriam-Webster Collegiate Dictionary defines "aggregate" as "taking all units as a whole," "the whole sum or amount" and "considered as a whole." Merriam-Webster Collegiate Dictionary at 24 (11th ed. 2004). When the Bidder Note 2 reference to the ***aggregate*** Total Bid Estimated Price is read in light of these definitions, the use of FAR 52.217-5 just two sentences before in the Notes to Bidders, and the structure of the RFP as a whole, Bidder Note 2 can reasonably be interpreted in only one way -- to mean the low bidder would be determined based on the bidder's whole or entire bid amount, including the optional items. The Corps' interpretation, on the other hand, impermissibly reads the term "aggregate" out of Bidder Note 2 and therefore is not a reasonable interpretation. See Raytheon Co., 2 Cl. Ct. at 770 (relying on dictionary definition of the term "originally," applying the plain dictionary meaning of that term, and rejecting as unreasonable an interpretation that rendered this term meaningless); Hol-Gar Mfg., 351 F.2d at 976 (construction not reasonable where it requires removing a single word from a contract).

### 4. The Corps' Interpretation Of Bidder Note 2 Needlessly Creates Conflict Rather Than Reading Bidder Note 2 Consistently With The Remainder Of The IFB

The Corps' attempt to render the term "aggregate" in Bidder Note 2 superfluous so that the reference to Total Estimated Bid Amount in Bidder Note 2 can be read to refer to the base bid Total Estimated Bid Amount on the bid schedule also violates the requirement to read solicitation language in a manner that avoids conflict unless no other reasonable interpretation is possible. Here, the Corps' post bid opening reading of Bidder Note 2 directly conflicts with FAR 52.217-5. However, Bidder Note 2 can reasonably can be interpreted to be fully consistent with FAR 52.217-5 simply by giving the term "aggregate" its plain and ordinary meaning of "taking all units as a whole." If Bidder Note 2 is read in this common sense fashion, as required by controlling precedent, it, like FAR 52.217-5, provides for award to the bidder submitting the lowest price for the base bid and optional items. See United Int'l, 109 F.3d at 737-38 (Federal Circuit rejects proffered contract interpretation that would "needlessly create a conflict" between two provisions and would render a portion of one of those provisions meaningless).

For each of these reasons, the Corps' post-bid opening finding of a "conflict" between FAR 52.217-5 and Bidder Note 2 is unreasonable and contrary to law. As such, it cannot support cancellation of the IFB after bids were opened and GLDD' prices were exposed. This is especially true here, where the pre-solicitation notice just issued by the Corps indicates that the Corps intends to resolicit the same 2.5 million cy of dredging from the same sections of the Baltimore Harbor entrance channels, holding an auction upon resolicitation that uses GLDD's low prices as a target. This is precisely the situation that FAR 14.404-1 was designed to prevent. There was no conflict or ambiguity in the IFB here and no compelling reason to cancel the IFB. Therefore, the Corps' actions violate FAR 14.404-1 and must be set aside.

**D. GLDD Is Entitled To The Preliminary Injunctive Relief It Seeks**

To obtain a preliminary injunction, a plaintiff must demonstrate that: (1) it has a likelihood of success on the merits; (2) that it will suffer irreparable harm if an injunction is not granted; (3) that the harm to the plaintiff if an injunction is not granted outweighs the harm to the government if an injunction is granted; and (4) that granting the injunction is in the public interest. See, e.g., Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000) (citations omitted).

GLDD has demonstrated above that it has a high likelihood of success on the merits and satisfies the first prong of this test because the Corps did ***not*** have a compelling reason to cancel the IFB. GLDD also will suffer irreparable injury if relief is not granted because it will be deprived of the potential profits it could earn pursuant to a contract awarded under the IFB if an injunction is not issued and the Corps awards the work to another bidder. See e.g., Great Lakes, 60 Fed. Cl. at 369-70; Overstreet Elec., 47 Fed. Cl. at 744; Bean Dredging Corp. v. United States, 22 Cl. Ct. 519, 524 (1991) (all holding that lost profits constitute irreparable injury). Moreover, GLDD also would be irreparably harmed if the Corps were permitted to resolicit this work because, as this Court has recognized many times, GLDD's low bid prices have been exposed and those prices will serve as targets if there is another round of bidding. Great Lakes, 60 Fed. Cl. at 370. In addition, this Court repeatedly has held that the denial of the right of a contractor to have its bid fully and lawfully considered for award also constitutes irreparable injury. Great Lakes, 60 Fed. Cl. at 370; Overstreet Elec., 47 Fed. Cl. at 744 n.25; Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 398 (1999).

The balance of hardships also weighs heavily in favor of granting injunctive relief to GLDD. As noted above and recognized by this Court many times, GLDD is a "sitting duck" if another round of bidding is permitted. Moreover, the Government will suffer no harm at all if

a preliminary injunction is granted, as the current bidding opening date under the Corps' proposed resolicitation is December 13, 2007, and GLDD is agreeable to an expedited schedule that will resolve this case on the merits prior to that time.

Finally, issuing a preliminary injunction in this case will serve the public interest. It is well-established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring procurement officials to follow procurement statutes and regulations. Great Lakes, 60 Fed. Cl. at 370; United Int'l Investigative Servs., Inc. v United States, 41 Fed. Cl. 312, 323 (1998). Here, the Corps' attempt to cancel the IFB without a compelling reason violates FAR 14.404-1 and undermines the integrity of the procurement process. Therefore, issuance of an injunction will serve the public interest.

## IV. CONCLUSION

For all of the reasons set forth above, plaintiff GLDD respectfully requests that the Court grant GLDD's motion and issue a preliminary injunction to maintain the status quo until the Court reaches a decision on the merits.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902

Attorney of Record for Plaintiff
Great Lakes Dredge & Dock Company LLC

Dated: November 1, 2007

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| GREAT LAKES DREDGE & DOCK COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | ) | Civil Action No. ________ |

STATEMENT OF PLAINTIFF'S COUNSEL

Pursuant to Appendix C II of the RCFC, the undersigned counsel for plaintiff Great Lakes Dredge & Dock Company LLC ("GLDD") certifies that:

1. On October 31, 2007, I provided telephonic and written notice (by facsimile) of GLDD's intent to file a Complaint for Preliminary and Permanent Injunctive Relief to the U.S. Department of Justice, Civil Division, Commercial Litigation Branch, and to the Clerk's Office for the United States Court of Federal Claims. On October 31, 2007, I sent the notification required by Appendix C II by facsimile to Sharon L. Roland, the procuring agency Contracting Officer under IFB No. W912-DR-07-B-0017. A copy of the Pre-Filing Notification and the facsimile cover sheets are attached. No award has been made in this procurement so there is no apparently successful bidder/offeror.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902

Attorney of Record for Plaintiff
Great Lakes Dredge & Dock Company LLC

Dated: November 1, 2007

STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

Daniel C. Sauls
202.429.8054
dsauls@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

October 31, 2007

Via FACSIMILE

(202) 357-6401

Clerk, United States Court
of Federal Claims
717 Madison Place NW, #103
Washington, DC 20011

Via FACSIMILE

(410) 962-2001

Sharon L. Roland
Contracting Officer
U.S. Army Corps of Engineers
Baltimore District
ATTN: CENAB-OC
P.O. Box 1715
Baltimore, MD 21203-1715

Re: **Pre-Filing Notification**

Pursuant to Appendix C to the Rules of the United States Court of Federal Claims, I hereby provide you with Pre-Filing Notification of our intention to file a Complaint under 28 U.S.C. § 1491(b) on behalf of Great Lakes Dredge & Dock Company LLC ("GLDD").

1. The procuring agency is the United States Army Corps of Engineers, Baltimore District, and the IFB No. is W912DR-07-B-0017, Maintenance Dredging, Baltimore Harbor and Channels.

2. The name of the contracting officer responsible for the procurement is Sharon L. Roland. Her telephone number is (410) 962-2290.

3. GLDD does not contemplate requesting temporary injunctive relief pursuant to RCFC 65 at this time. GLDD will be requesting a preliminary injunction. GLDD has discussed this request with Brian Edmunds, counsel for the government, from the Department of Justice.

4. This action was not preceded by the filing of a protest before the General Accounting Office.

5. GLDD does not believe that the Court needs to enter a protective order in this case.

Please do not hesitate to contact me if you have any questions or if I may be of assistance.

Sincerely,

Daniel C. Sauls
Counsel for Great Lakes Dredge & Dock Company LLC

cc: Mark Melnick, Department of Justice, Commercial Litigation Branch (via facsimile) (202) 305-2062

Brian Edmunds, Department of Justice, Commercial Litigation Branch (via facsimile) (202) 307-0972

*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1384 |
| CONNECTION TEL | 055#0043#2023576401# |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 10/31 12:26 |
| USAGE T | 00'56 |
| PGS. SENT | 3 |
| RESULT | OK |


STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

1330 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-1795
FACSIMILE: 202.429.3902
VERIFICATION: 202-429-8045
MAIN NUMBER: 202.429.3000
www.steptoe.com

CHICAGO, ILLINOIS
FACSIMILE 312.577.1370
VERIFICATION: 312.577.1300

NEW YORK, NEW YORK
FACSIMILE: 212.506.3950
VERIFICATION: 212.506.3900

LONDON, ENGLAND
STEPTOE & JOHNSON
FACSIMILE: 011.44.207.367.8001
VERIFICATION: 011.44.207.367.8000

BRUSSELS, BELGIUM
FACSIMILE: 011.322.626.0510
VERIFICATION: 011.322.626.0500

PHOENIX, ARIZONA
FACSIMILE: 602.257.5299
VERIFICATION: 602.257.5287

LOS ANGELES, CALIFORNIA
FACSIMILE 213.439.9599
VERIFICATION: 213.439.9400

CENTURY CITY, CALIFORNIA
FACSIMILE 310.734.3300
VERIFICATION: 310.734.3200


**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the above address.

## DELIVER TO:

NAME: **Clerk, United States Court of Federal Claims** TELECOPY PHONE NUMBER: **202-357-6401**

COMPANY: VERIFICATION NUMBER:

TOTAL PAGES & COVER SHEET: **3** DATE TRANSMITTED:

S&J OPERATOR'S NAME: **Linda Keary** TELEPHONE NUMBER: **(202) 429-8018**

CLIENT/CASE NUMBER: **53055.0043**

## FROM:

NAME: **Daniel C. Sauls**

REQUEST MADE ON DATE: **10/31/07** TIME: **11:53 AM**

*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1385 |
| CONNECTION TEL | 55#0043#14109622001# |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 10/31 12:28 |
| USAGE T | 00'58 |
| PGS. SENT | 3 |
| RESULT | OK |

# STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW


CHICAGO, ILLINOIS
FACSIMILE 312.577.1370
VERIFICATION: 312.577.1300

NEW YORK, NEW YORK
FACSIMILE: 212.506.3950
VERIFICATION: 212.506.3900

LONDON, ENGLAND
STEPTOE & JOHNSON
FACSIMILE: 011.44.207.367.8001
VERIFICATION: 011.44.207.367.8000

1330 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-1795
FACSIMILE: 202.429.3902
VERIFICATION: 202-429-8045
MAIN NUMBER: 202.429.3000
www.steptoe.com

BRUSSELS, BELGIUM
FACSIMILE: 011.322.626.0510
VERIFICATION: 011.322.626.0500

PHOENIX, ARIZONA
FACSIMILE: 602.257.5299
VERIFICATION: 602.257.5287

LOS ANGELES, CALIFORNIA
FACSIMILE 213.439.9599
VERIFICATION: 213.439.9400

CENTURY CITY, CALIFORNIA
FACSIMILE 310.734.3300
VERIFICATION: 310.734.3200


**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the above address.

## DELIVER TO:

NAME: **Sharon L. Roland, Contracting Officer** TELECOPY PHONE NUMBER: **410-962-2001**

COMPANY: **U.S. Army Corps of Engineers** VERIFICATION NUMBER:

TOTAL PAGES & COVER SHEET: **3** DATE TRANSMITTED:

S&J OPERATOR'S NAME: **Linda Keary** TELEPHONE NUMBER: **(202) 429-8018**

CLIENT/CASE NUMBER: **53055.0043**

## FROM:

NAME: **Daniel C. Sauls**

REQUEST MADE ON DATE: **10/31/07** TIME: **11:55 AM**

COMPLETION REQUIRED BY DATE: **10/31/07** TIME: **ASAP**

*********************
*** TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1386 |
| CONNECTION TEL | 055#0043#2023052062# |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 10/31 12:29 |
| USAGE T | 01'00 |
| PGS. SENT | 3 |
| RESULT | OK |

STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

CHICAGO, ILLINOIS
FACSIMILE 312.577.1370
VERIFICATION: 312.577.1300

NEW YORK, NEW YORK
FACSIMILE: 212.506.3950
VERIFICATION: 212.506.3900

LONDON, ENGLAND
STEPTOE & JOHNSON
FACSIMILE: 011.44.207.367.8001
VERIFICATION: 011.44.207.367.8000

1330 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-1795
FACSIMILE: 202.429.3902
VERIFICATION: 202-429-8045
MAIN NUMBER: 202.429.3000
www.steptoe.com

BRUSSELS, BELGIUM
FACSIMILE: 011.322.626.0510
VERIFICATION: 011.322.626.0500

PHOENIX, ARIZONA
FACSIMILE: 602.257.5299
VERIFICATION: 602.257.5287

LOS ANGELES, CALIFORNIA
FACSIMILE 213.439.9599
VERIFICATION: 213.439.9400

CENTURY CITY, CALIFORNIA
FACSIMILE 310.734.3300
VERIFICATION: 310.734.3200

**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the above address.

## DELIVER TO:

NAME: **Mark Melnick** TELECOPY PHONE NUMBER: **202-305-2062**

COMPANY: **Department of Justice** VERIFICATION NUMBER:

TOTAL PAGES & COVER SHEET: **3** DATE TRANSMITTED:

S&J OPERATOR'S NAME: **Linda Keary** TELEPHONE NUMBER: **(202) 429-8018**

CLIENT/CASE NUMBER: **53055.0043**

## FROM:

NAME: **Daniel C. Sauls**

REQUEST MADE ON DATE: **10/31/07** TIME: **12:16 PM**

COMPLETION REQUIRED BY DATE: **10/31/07** TIME: **ASAP**

********************
*** TX REPORT ***
********************

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1387 |
| CONNECTION TEL | 055#0043#2023070972# |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 10/31 12:31 |
| USAGE T | 01'01 |
| PGS. SENT | 3 |
| RESULT | OK |

STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW


CHICAGO, ILLINOIS
FACSIMILE 312.577.1370
VERIFICATION: 312.577.1300

NEW YORK, NEW YORK
FACSIMILE: 212.506.3950
VERIFICATION: 212.506.3900

LONDON, ENGLAND
STEPTOE & JOHNSON
FACSIMILE: 011.44.207.367.8001
VERIFICATION: 011.44.207.367.8000

1330 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-1795
FACSIMILE: 202.429.3902
VERIFICATION: 202-429-8045
MAIN NUMBER: 202.429.3000
www.steptoe.com

BRUSSELS, BELGIUM
FACSIMILE: 011.322.626.0510
VERIFICATION: 011.322.626.0500

PHOENIX, ARIZONA
FACSIMILE: 602.257.5299
VERIFICATION: 602.257.5287

LOS ANGELES, CALIFORNIA
FACSIMILE 213.439.9599
VERIFICATION: 213.439.9400

CENTURY CITY, CALIFORNIA
FACSIMILE 310.734.3300
VERIFICATION: 310.734.3200


**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the above address.

## DELIVER TO:

NAME: **Brian Edmunds** TELECOPY PHONE NUMBER: **202- 307-0972**

COMPANY: **Department of Justice** VERIFICATION NUMBER:

TOTAL PAGES & COVER SHEET: **3** DATE TRANSMITTED:

S&J OPERATOR'S NAME: **Linda Keary** TELEPHONE NUMBER: **(202) 429-8018**

CLIENT/CASE NUMBER: **53055.0043**

## FROM:

NAME: **Daniel C. Sauls**

REQUEST MADE ON DATE: **10/31/07** TIME: **12:18 PM**

COMPLETION REQUIRED BY DATE: **10/31/07** TIME: **ASAP**

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| **GREAT LAKES DREDGE & DOCK COMPANY LLC,** Plaintiff, v. **UNITED STATES,** Defendant. | **Civil Action No. ________** |

**NOTICE OF APPEARANCE**

PLEASE TAKE NOTICE that the undersigned hereby appears on behalf of plaintiff Great Lakes Dredge & Dock Company LLC in the above-captioned action, and requests that all papers in this action be served upon undersigned counsel at Steptoe & Johnson LLP, 1330 Connecticut Avenue, N.W., Washington, D.C. 20036.

Respectfully submitted,

Daniel C. Sauls
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8054
Facsimile: (202) 429-3902
dsauls@steptoe.com

**Attorney of Record for Great Lakes Dredge & Dock Company LLC**

Dated: November 1, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of Great Lakes Dredge & Dock Company LLC's Complaint for Preliminary and Permanent Injunctive Relief, Motion for Preliminary Injunction, Memorandum In Support of Its Motion for A Preliminary Injunction, Notice of Appearance, Statement of Plaintiff's Counsel, and Rule 7.1 Statement were served, this 1st day of November, 2007 by email on the following:

Sharon L. Roland
Contracting Officer
U.S. Army Corps of Engineers
Baltimore District
ATTN: CENAB-OC
P.O. Box 1715
Baltimore, MD 21203-1715

Brian Edmunds
Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W., Room 12072
Washington, DC 20530

Daniel C. Sauls